**Lubelyn CADDALI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–70464.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 1991 *.

Decided Dec. 23, 1991.

Ronald T. Oldenburg, Honolulu, Hawaii, for petitioner.

Robert Kendall, Jr., Asst. Director, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before GOODWIN, SKOPIL, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Lubelyn Caddali appeals the denial of her petition for a waiver of deportability under section 241(f)(1) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(f)(1), *repealed by* Pub.L. 101–649, § 602(b)(1), Nov. 29, 1990. We reverse and remand.

### FACTS

Lubelyn L. Caddali, a citizen of the Philippines, was born in Banna Ilocos Norte, Philippines on July 28, 1964. She became engaged to David Alan Paa, a citizen of the United States, who filed a petition that a visa be granted her to enter the United States to marry him. The visa was issued. She entered the United States on February 26, 1983.

Unknown to Lubelyn Caddali, David Paa had been killed on February 18, 1983. In-

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

stead of a marriage, she attended his funeral.

On March 11, 1983 she entered into a marriage, now conceded by her to have been fraudulent, with Bienvenido Aspili, a United States citizen. On the basis of this marriage she adjusted her status to that of a permanent resident alien. The fraudulent character of her marriage came to the attention of the Immigration and Naturalization Service (the Service), which brought proceedings to deport her. Her father and her three-year-old daughter are citizens of the United States.

## PROCEEDINGS

The immigration judge ruled that she was deportable and denied her application under 8 U.S.C. § 1251(f)(1) for waiver of deportability as the mother of a United States citizen and the child of a United States citizen.

Caddali appealed to the Board of Immigration Appeals (the Board) which ruled as follows:

> According to 8 C.F.R. § 214.2(k)(5), the approval of a nonimmigrant fiance petition is automatically terminated when the petitioner dies before the beneficiary arrives in the United States. Since the respondent's fiance died prior to her arrival, her visa petition was automatically revoked upon his death and she was no longer entitled to the status accorded by her visa. *See Matter of Alarcon*, 17 I & N Dec. 574 (BIA 1980). Her nonimmigrant visa was therefore invalid at the time she sought admission to the United States, so the immigration judge properly found her to be deportable as charged.

The Board went on to say:

> ... the respondent was found deportable due to the lack of a valid visa at the time of her entry, not because of the fraud she later committed in adjusting her status on the basis of a sham marriage. Thus, a section 241(f)(1) waiver would not eliminate the grounds of deportabili-

ty with which she is charged. Accordingly, the appeal will be dismissed.

Caddali appeals to this court.

## ANALYSIS

As the Board has accurately stated, the approval of a petition on behalf of a fiancee terminates automatically when the petitioning fiance dies before the beneficiary of the petition arrives in the United States. 8 C.F.R. § 214.2(k)(5). The termination of approval of the petition does not, however, automatically revoke the visa which has been issued on the basis of the petition. To the contrary, the State Department has issued elaborate regulations governing "nonimmigrant visas." Under these regulations consulate officers are authorized to revoke visas for a variety of reasons. These reasons include a finding by the consular officer that the alien ceased to be entitled to the classification stated in the visa. 22 C.F.R. § 41.122(a)(1). When consideration is being given to such revocation, the consular officer "shall, if practicable, notify the alien to whom the visa was issued of intention to revoke the visa," and the alien "should also be given an opportunity to show why the visa should not be revoked." 22 C.F.R. § 41.122(b). When the visa is revoked "it should be cancelled by writing or stamping the words 'REVOKED' plainly across the face of the visa." 22 C.F.R. § 41.122(c).

As there was no compliance with these regulations of the State Department, there was no revocation of Lubelyn Caddali's visa. She held an unrevoked visa at the time of her entry.

**REVERSED and REMANDED.**